IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

HORACE MANN INSURANCE
COMPANY

     **Plaintiff,**

                                                    **CIVIL ACTION NO. 1:04-CV-163**
**v.**                                                       **(Judge Keeley)**

GENERAL STAR NATIONAL
INSURANCE COMPANY

     **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

     This insurance coverage dispute arises from the settlement of a lawsuit in which the parents of a Lincoln County, West Virginia, public school student sued several employees of the school district for the negligent supervision of a teacher who sexually assaulted their child during the 2002-2003 school year. The suit was settled by the Lincoln County Board of Education, and the settlement was paid by the Board's two insurers. One of those insurers, the defendant, General Star National Insurance Company ("General Star"), subsequently sought contribution from a third insurer, the plaintiff, Horace Mann Insurance Company ("Horace Mann") which had underwritten an employment general liability policy that personally covered one of the defendants, the school principal, David Bell ("Bell").

<u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to 28 U.S.C. § 2201, *et seq.*, Horace Mann brought this action seeking a declaration that its coverage is excess to that of General Star, and that, as such, the coverage provided by General Star's policy must be completely exhausted before Horace Mann is obligated to contribute any amount.  In answering Horace Mann's complaint, General Star counterclaimed for both a declaration defining the parties' rights and obligations, and also a money judgment compensating General Star for the portion of the underlying settlement it alleges Horace Mann was obligated to cover.  Subsequently, the parties filed cross motions for summary judgment and declaratory relief, which are ripe for decision.

For the reasons that follow, the Court **GRANTS** Horace Mann's motion for summary judgment, **DENIES** General Star's motion for summary judgment, and **DECLARES** that the coverage provided by the Horace Mann policy is unambiguously excess to the coverage provided by the General Star policy.  Thus, the coverage limits of General Star's policy must be exhausted before Horace Mann is obligated to contribute to any settlement.

## I. <u>Factual and Procedural Background</u>

Pursuant to W.Va. Code § 29-12-5a (2000), on behalf of all county boards of education and their employees, the state Board of Risk and Insurance Management must purchase at least one million

2

<u>MEMORANDUM OPINION AND ORDER</u>

dollars of primary liability insurance coverage, as well as at least five million dollars of excess coverage.  For the Lincoln County Board of Education's 2002-2003 school year, that statutorily-required insurance package consisted of a primary policy issued by the National Union Fire Insurance Company ("National Union")[1] and an excess policy issued by General Star[2]. Sometime during that school year, a high school teacher in the Lincoln County school system sexually abused a student, and, in January, 2004, the child's parents sued the teacher, the Board and several school system employees, including Bell, the school principal.  In April 2004, the parties settled the suit for an undisclosed sum above National Union's one million dollar primary policy limit and within General Star's additional five million dollar excess limit.[3]

Although General Star contributed to the settlement, it later sought contribution from Horace Mann, an insurer whose policy of

---

[1] Policy No. 612-53-97.

[2] Policy No. NXG-358846D.

[3] National Union is not a party to this action, and it is undisputed that National Union's policy provided the primary liability coverage for the underlying claims.

employee liability insurance covered members of the West Virginia Education Association, including defendant Bell.[4]

## II. Standards of Review

A motion for summary judgment should be granted when the record reveals that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Further, in almost any case over which it has jurisdiction, a federal district court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not any further relief is or could be sought."  28 U.S.C. § 2201; see also F.R.Civ.P. 57.

## III. Discussion

There is no dispute of material fact about the incidents giving rise to the underlying civil action and its subsequent settlement, which involved a combination of insureds covered under three separate policies written by National Union, General Star and Horace Mann, respectively.  Further, it is undisputed that National Union's policy provided primary liability coverage on the underlying claims; thus, the only issue before the Court is the

---

[4] Policy No. 47-006047.

4

proper priority of coverage between the policies of General Star
and Horace Mann on the claims against defendant Bell.   That
determination is a question of law. Syllabus point 1, <u>Tennant v.
Smallwood</u>, 568 S.E.2d 10 (W.Va. 2002)("[d]etermination of the
proper coverage of an insurance contract when the facts are not in
dispute is a question of law").

Each insurer argues that its policy is excess to that of the
other.   Horace Mann contends that a comparison of the plain
language of its "other insurance" provision with that of General
Star establishes the "super-excess" status of its policy and the
"simple excess" status of General Star's policy.   Alternatively,
Horace Mann asserts that, because West Virginia statutory law
requires political subdivisions to indemnify their employees
against damages arising from their employment, and because insurers
stand in the shoes of their insureds, it cannot be required to
contribute to General Star as the Board's insurer because the Board
is required to indemnify David Bell.

General Star argues that the language of Horace Mann's other
insurance provision is ambiguous and contains an "escape" clause,
warranting a finding that its policy is excess to Horace Mann's
policy.   General Star also argues that, pursuant to the "<u>Allstate</u>
Rule</u>," its policy is excess because it is a "true excess" or

"umbrella" policy, while Horace Mann's policy contains a duty to defend and could provide primary coverage to the insured in certain situations.

Under West Virginia law, when a court decides a case "concerning the language employed in an insurance policy, [it must] look to the precise words employed in the policy of coverage." Horace Mann Insurance Company v. Adkins, 599 S.E.2d 720, 724 (W.Va. 2004). Thus, before proceeding to analyze the parties' coverage arguments, the Court first will review the relevant policy language in the parties' respective insurance contracts.

**A. Policy Language**

The insurance policy issued to the members of the West Virginia Education Association, including David Bell, by Horace Mann provides in pertinent part:

> **Coverage A –   Educators Liability**
> $1,000,000 per member per **occurrence** not to include any civil rights issues or claims
>
> \*\*\*
>
> **NEA EDUCATORS EMPLOYMENT LIABILITY CONTRACT**
> \*\*\*
>
> **I.   INSURING AGREEMENTS**
> Horace Mann Insurance Company, called HMIC in this contract, agrees to provide the **Insured** . . . with the coverages shown on the declarations page in return for the payment of the premium and subject to the limits of

liability, exclusions, conditions and all other terms of this contract.

\*\*\*

**III. COVERAGES**
Subject to the exclusions, conditions, limits of liability and other terms of this contract:

**A. COVERAGE A - EDUCATORS LIABILITY.** HMIC agrees to pay on behalf of the Insured any and all loss, subject to the limit of liability . . . . Such loss must be sustained by the **Insured** by reason of liability imposed by law for damage caused by an **occurrence** in the course of the **Insured's educational employment activities**.

\*\*\*

**VIII. CONDITIONS**

\*\*\*

**I. OTHER INSURANCE.** This is a manuscript contract and is personal to the individual named herein. It was written and priced to reflect the intent of all parties that this policy is in excess of any and all other insurance policies, insurance programs, self-insurance programs, and defense and indemnification arrangements whether primary, excess, umbrella or contingent and whether collectible or not, to which the **Insured** is entitled or should have been entitled, by contract or operation of law, to coverage or to payment including, but not limited to, payment of defense and/or indemnification. Further, it is the intent of the parties that the coverage afforded in this policy does not apply if the **Insured** has other valid and collectible insurance of any kind whatsoever whether primary or excess, or if the **Insured** is entitled to defense or indemnification from any other source whatsoever, including, by way of example only, such sources as state statutory entitlements or provisions, except any excess beyond the amount which would have been payable under such other policy or policies or insurance program or defense or

indemnification arrangement had this policy not been in effect.  Other valid and collectible insurance includes, but is not limited to, policies or insurance programs of self-insurance purchased or established by or on behalf of an **educational unit** to insure against liability arising from activities of the **educational unit** or its **employees** regardless of whether or not the policy or program provides primary, excess, umbrella, or contingent coverage . . . .

This policy is specifically excess over coverage provided by school district or school board errors and omissions or general liability policies purchased by the **Insured's** employer or former employer and it is specifically excess over coverage provided by any School Leaders Errors and Omissions Policy purchased by the **Insured's** employer or former employer and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to or recites that it is excess to a policy issued to the Insured for the benefit of members of the National Education Association. . . .

If it is determined that HMIC must contribute to the coverages provided in Section III of this contract with any other valid and collectible excess insurance, HMIC's contributing limit of liability shall be determined and paid as follows: . . . .

(Doc. No. 22-3.)

By contrast, the General Star policy issued to the West Virginia County Boards of Education provides, in pertinent part:

**I. COVERAGE**
The Company shall Indemnity [sic] the insured for **ultimate net loss** in excess of the **underlying insurance** . . . but not in excess of the Company's limits of liability . . . .

**II. APPLICATION OF UNDERLYING INSURANCE**

8

Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy, including any endorsements attached here to, the terms conditions, agreements, definitions, exclusions and limitations of the **controlling underlying insurance policy** are incorporated by reference as a part of this Policy.

\*\*\*

**DEFINITIONS**

1. **Controlling Underlying Insurance Policy**
The term "Controlling Underlying Insurance Policy" means the insurance policy designated as such in Item 2 of the Declarations [i.e., the National Union policy].

\*\*\*

5. **Ultimate Net Loss**
The term "Ultimate Net Loss" means the total of all sums which the insured, or any organization as its insurer, or both, shall become legally obligated to pay, whether by reason of adjudication or settlement, because of an occurrence covered under the terms of the **controlling underlying insurance policy** and to which this Policy applies: ultimate net loss shall include costs, but shall not include recoveries, salvages or other insurance except underlying insurance or insurance written specifically to apply in excess of this policy whether collectible or not.

6. **Underlying Insurance**
The term "Underlying Insurance", means the primary or excess insurance policies contributing to the limit stated in Item 2 of the Declarations, including any deductible amount, insured's participation or self insured retention beneath any such policy, and includes any renewals or replacements thereof. The limits of such policies shall be deemed to be applicable regardless of (1) any defense which the underlying insurer may assert, (2) the insured's failure to comply with any condition of any such policy or

MEMORANDUM OPINION AND ORDER

(3) the insolvency of the underlying insurer.

**CONDITIONS**

\*\*\*

**(C) Other Insurance**

If other valid and collectible insurance with any other
insurer is available to the insured covering a loss also
covered by this Policy, other than insurance that is in
excess of the insurance afforded by this Policy the
Insurance afforded by this Policy shall be in excess of
and shall not contribute with such other insurance[.]
Nothing herein shall be construed to make this Policy
subject to the terms, conditions, and limitations of
other insurance, reinsurance or indemnity.

(Doc. No. 22-2.)

**B. Analysis**

The parties' arguments fall into three general categories: 1)
those based on the language of the respective policies; 2) those
based on the type or nature of the respective policies; and 3)
those based on statutory provisions of the West Virginia Code. The
Court addresses each in turn below.

**i. Arguments Based on Policy Language**

Under West Virginia law, "[l]anguage in an insurance policy
should be given its plain, ordinary meaning." <u>Adkins</u>, 599 S.E.2d at
724 (quoting Syl. pt. 1, <u>Soliva v. Shand, Morahan & Co., Inc.</u>, 345
S.E.2d 33 (W.Va. 1986)). Further, "[w]here provisions in an
insurance policy are plain and unambiguous and where such

provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Id. (quoting Syl. pt. 2, Shamblin v. Nationwide Mut. Ins. Co., 332 S.E.2d 639 (W.Va. 1985).  However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Id. (quoting Syl. pt. 1, Prete v. Merchants Prop. Ins. Co.of Indiana, 223 S.E.2d 441 (W.Va. 1976).  Finally, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, National Mutual Insurance Company v. McMahon & Sons, 356 S.E.2d 488 (W.Va. 1987), overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co., 504 S.E.2d 135 (W.Va. 1998).

Here, Horace Mann contends that the plain language of its policy contains a "super-excess" provision establishing that it can "never be primary to **any** other policy." (Doc. No. 22-1 at 11) (emphasis in original).  Specifically, the other insurance provision found in the Conditions section of Horace Mann's policy provides that the policy "was written and priced to reflect the intent of all parties that this policy is in excess of any and all

other insurance policies, insurance programs, self-insurance programs, and defense and indemnification arrangements whether primary, excess, umbrella or contingent and whether collectible or not . . . ." (<u>See</u>, Doc. No. 22-3.)

According to Horace Mann, the plain language of General Star's other insurance provision constitutes a "simple excess" provision that, in contrast to Horace Mann's policy, recognizes that other policies may be excess to it. Specifically, the General Star policy provides: "If other valid and collectible Insurance with any other insurer is available to the Insured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other Insurance." (<u>See</u>, Doc. No. 22-2.)  Thus, Horace Mann argues that, given the clear language of the policies' respective provisions, its policy is excess to that of General Star.

General Star contends that the "any and all" language on which Horace Mann relies is not controlling. According to General Star, that language constitutes a recital of intent and is not an obligatory term of the contract of insurance between Horace Mann and David Bell.  In support of its argument, it cites <u>Martin v. Rothwell</u>, 95 S.E. 189, 190 (W.Va. 1918), where the West Virginia

Supreme Court of Appeals stated: "[P]aragraphs in a contract containing recitals of the purposes and intentions of the parties thereto are not strictly speaking parts of the contract, unless adopted as such by reference thereto."

Horace Mann disputes that <u>Martin</u>'s holding, that the preambulatory language of a contract is non-obligatory, applies to its policy because that language falls under the Conditions section of the insurance policy, thereby evincing "its obligatory nature." (Doc. No. 29 at 3.)  While it is correct that the language at issue in <u>Martin</u> was located at the beginning of the contract, it should be noted that nothing in the holding of that case conditions the non-obligatory nature of recitals on their placement within a contract. <u>See</u>, Syl., 95 S.E. 189 (stating that, "[t]he obligation of the parties to a contract is not determined by the *recitals therein, or the preamble thereto*" (emphasis added)).  Nevertheless, the gravamen of Horace Mann's argument focuses on the inclusion of the challenged language in a section of its policy that unambiguously limits the policy's coverage provisions.

In West Virginia, a recital of the intent of the parties under a contract may be obligatory if it is adopted as such by the parties in the contract. <u>Martin</u>, 95 S.E. at 190.  In this case, Horace Mann's policy provides that "[i]t was written and priced to

reflect the intent of all parties that this policy is in excess of any and all other insurance policies . . . ." The plain meaning of that language is that the Horace Mann policy was *written* to reflect the parties' intent that the coverage provided be excess to all other insurance policies. Further, that language is found under the "Conditions" section of the policy, which, in turn, limits the policy's coverage provisions pursuant to the terms of the "Insuring Agreements" provision of the policy. Thus, in accord with <u>Martin</u>, the statement of intent in the Horace Mann policy was incorporated by reference into the body of the contract, and thus is obligatory.

General Star asserts as its next argument that additional language in the  other insurance provision of the Horace Mann policy constitutes an "escape clause" which, under the prevailing "majority view", renders that policy primary to policies containing excess clauses such as that found in the General Star policy. The challenged language provides:

> [I]t is the intent of the parties that the coverage afforded in this policy does not apply if the **Insured** has other valid and collectible insurance of any kind whatsoever whether primary or excess, or if the **Insured** is entitled to defense or indemnification from any other source whatsoever, including, by way of example only, such sources as state statutory entitlements or provisions, except any excess beyond the amount which would have been payable under such other policy or policies or insurance program or defense or

indemnification arrangement had this policy not been in effect.
(<u>See</u>, Doc. No. 22-3.)

The term "escape clause" is a term of art. It "allows a party to avoid performance under specified conditions . . . ." <u>Black's Law Dictionary</u> 712 (8th ed. 2004). In the context of insurance, an escape clause is a policy provision, usually found in the policy's "other insurance" section, "requiring the insurer to provide coverage only if no other coverage is available." <u>Id.</u>; <u>accord</u> Appleman, <u>Insurance Law and Practice</u> § 2910 ("A basic escape clause provides that there shall be no coverage where there is other valid and collectible insurance.").

To be an escape clause, the challenged language in Horace Mann's policy would have to disclaim any coverage if another policy also covered the insured. This it clearly does not do. Rather, the provision states that the policy "does not apply . . . *except any excess*" above the coverage provided by other applicable policies. (Emphasis added.) Thus, the challenged language is an excess, not an "escape", clause, that reads consistently with the language of the Horace Mann other insurance provision challenged as a recital.

General Star argues next that the Horace Mann "other insurance" provision is ambiguous because, although it provides

that the policy's coverage is excess to "any and all other insurance policies," it also provides applicable apportionment terms in the event "it is determined that [Horace Mann] must contribute to the coverages provided in [the policy] with any other valid and collectible excess insurance." (Doc. 22-3 at 8.) According to General Star, if Horace Mann's policy were truly excess to all other insurance, there would be no need to provide apportionment terms in its policy. Thus, it asserts that the two provisions are incompatible and create an ambiguity that should be resolved against Horace Mann.

Horace Mann responds that the apportionment terms in its other insurance provision do not render the "super-excess" language of its policy ambiguous. Rather, a description of how contribution is to be effected under the policy is necessary in the event "an insured under the Horace Mann Policy were also covered by another policy of insurance which was super-excess in nature." (Doc. No. 25 at 11.) Horace Mann argues vigorously that such is not the case here, where the plain language of the respective policies' other insurance provisions establishes the primacy of General Star's "simple excess" coverage.

"Competing excess insurance clauses 'should be disregarded inasmuch as they are mutually repugnant and as against each other

cannot be recognized.'" <u>American Safety Indem. Co. v. Stollings Trucking Co.</u>, 2006 WL 2507053, 9 (S.D.W.Va. 2006)(quoting <u>Allstate Insurance Co. v. Atlantic National Insurance Co.</u>, 202 F.Supp 85, 88 (S.D.W.Va. 1962)). As such, if a coverage dispute existed between Horace Mann's policy and another policy that provided it was excess to all other applicable insurance policies, the policies' mutually repugnant excess insurance provisions would cancel out one another and give rise to the question of apportionment, thereby implicating the apportionment terms in the Horace Mann other insurance provision.  In the absence of mutually repugnant provisions, however, the apportionment terms of the Horace Mann other insurance provision are not implicated and no conflict or ambiguity is created with the policy language providing for coverage excess to "any and all other insurance policies."

In its final challenge based on policy language, General Star contends that the inclusion of both general and specific terms in Horace Mann's other insurance provision renders that provision ambiguous, thereby requiring the Court to restrict the construction of the general terms in that provision to a meaning derived from the accompanying specific words. <u>See</u> <u>Change, Inc. v. Westfield Ins. Co.</u>, 542 S.E.2d 475, 478-79 (W.Va. 2000)(discussing the doctrines of *ejusdem generis* and *noscitur a sociis*, and finding that "their

application holds that in an ambiguous phrase mixing general words with specific words, the general words are not construed broadly but are restricted to a sense analogous to the specific words"). According to General Star, the language in the Horace Mann other insurance provision providing for coverage that is excess to "any and all other insurance policies" is restricted by later language in that same provision providing for coverage that is "specifically excess" to certain enumerated types of policies that do not reference the kind of excess policy issued by General Star.[5]

In response, Horace Mann points out that the language of its policy's other insurance provision expressly declares its coverage to be excess to coverage provided by policies such as that of General Star. Specifically, in the clause previously challenged by General Star as an escape clause, Horace Mann provides that its policy coverage will apply to any excess beyond amounts payable by "other valid and collectible insurance." The policy then defines "other valid and collectible insurance" to include "policies or

---

[5] To wit:
This policy is specifically excess over coverage provided by school district or school board errors and omissions or general liability policies purchased by the **Insured's** employer or former employer and it is specifically excess over coverage provided by any School Leaders Errors and Omissions Policy purchased by the **Insured's** employer or former employer and it is specifically excess over coverage provided by any policy of insurance which purports to be excess to or recites that it is excess to a policy issued to the Insured for the benefit of members of the National Education Association. . . .

insurance programs of self-insurance purchased or established by or on behalf of an **educational unit** to insure against liability arising from activities of the **educational unit** or its **employees** regardless of whether or not the policy or program provides primary, excess, umbrella, or contingent coverage . . . ." Horace Mann contends that is exactly the kind of insurance policy General Star issued in this case.

The Court agrees. First, pursuant to the terms of Horace Mann's policy, General Star's additional insured, the Lincoln County Board of Education, qualifies as an "educational unit."[6] Next, pursuant to the mandate of West Virginia Code § 29-12-5a, the General Star policy satisfies the statutory requirement that the state provide excess liability coverage to the Lincoln County Board of Education for the covered actions of the Board's employees in their official capacities. Thus, the Horace Mann policy specifically declares its coverage to be excess to the kind of

---

[6] Horace Mann's policy provides that:

The term "Educational Unit" means a school district; a college or university; a state department of education; . . . any other institution which has as its primary purpose the instruction of students, a department or other administrative unit of a governmental entity which does not have as its primary purpose instruction of students, if the primary purpose of the administrative unit is the instruction of students; or a state board or commission which has as its primary purpose the licensure or certification of educators or the setting of standards for such licensure or certification.

coverage issued by General Star to the Lincoln County Board of Education.  Moreover, no specific declaration in the Horace Mann other insurance provision conflicts with the declaration that the policy's coverage is excess to "any and all other insurance policies."

**** 

In summary, the Court finds that the language of both Horace Mann's and General Star's other insurance provisions is unambiguous.  Further, in applying the plain and ordinary meaning of the words used in those provisions, the Court concludes that, as written, the coverage provided by Horace Mann's policy is unambiguously excess to the coverage provided by the policy issued by General Star.

### ii. Arguments Based on Policy Type

The unambiguous language in the parties' policies notwithstanding, General Star argues that a structural difference in the parties' respective coverage schemes renders its policy excess to the Horace Mann policy.  That difference relates to the kinds of coverage each policy is capable of providing, and not to the coverage actually provided by the terms of each policy.  Specifically, General Star contends that its policy is a "true excess" or "umbrella" policy that can never provide primary

20

insurance coverage, while Horace Mann's policy is a primary insurance policy that only becomes excess when certain conditions are met. As such, General Star asserts that the Court should apply the clear mandate of the so-called "Allstate Rule" to the facts of this case and declare the Horace Mann policy primary to its policy.

In Allstate Insurance Co. v. American Hardware Mutual Ins. Co., 865 F.2d 592 (4th Cir. 1989), the Fourth Circuit Court of Appeals was tasked with determining the order of priority under West Virginia law of two secondary liability insurers, Allstate and American, following the payment of policy limits by a primary insurer, Continental, for damages arising from an automobile accident involving a vehicle "owned by Chrysler Corporation and leased to Greenbrier Motor Company, Inc." Id. at 593. American insured Greenbrier under a policy that provided primary liability coverage for garage operations, but only excess coverage in the event a "non-owned" vehicle was involved in a covered event. Id. at 593-94. By contrast, Allstate insured Chrysler under a policy providing "umbrella" coverage intended as excess to all other insurance policies held by Chrysler. Id. at 593.

As characterized by the court, "[t]he issue presented [was] the interplay and effect of the excess clauses contained in the two policies." Id. at 594. After noting that West Virginia courts had

MEMORANDUM OPINION AND ORDER

not decided the issue, and that the Fourth Circuit had no controlling precedent on point, the court looked for guidance to the case of <u>Allstate Insurance Co. v. Employers Liability Assurance Corp. Ltd.</u>, 445 F.2d 1278 (5th Cir. 1971).

In that case, the Fifth Circuit Court of Appeals had to determine the priorities of three competing secondary insurers after a primary insurer had paid its policy limits to cover damages arising from an automobile accident involving a leased vehicle. Two of the three competing secondary insurers had issued policies that provided primary liability coverage in most instances, but only excess insurance if a covered event involved a "non-owned" vehicle. <u>Allstate v. Employers</u>, 445 F.2d at 1283. The third insurer had issued an "umbrella" policy that "assumed only residual loss coverage in every event." <u>Id.</u> After looking to the "total policy insuring intent" of the parties, the Fifth Circuit concluded that the two policies that were "designed to provide a named insured with primary coverage," but which provided only excess coverage in the case at hand, had to absorb the loss on a pro rata basis and exhaust their policy limits before the umbrella insurer could be required to contribute. <u>Id.</u> at 1283-84.

The Fourth Circuit interpreted the Fifth Circuit's decision as adopting a rule that "primary policies with excess clauses must be

exhausted before the carrier of an umbrella policy will be required

to pay." 865 F.2d at 594.  Further, after noting that the "Allstate

Rule" had been adopted in numerous state and federal jurisdictions,

the court stated:

> It seems clear to us that the weight of authority holds
> that where purported conflicts exist between an umbrella
> policy and an essentially primary policy made excess by
> a non-ownership clause, the courts have held that the
> umbrella policy need not contribute until after the
> primary and ordinary excess coverages are exhausted.

Id.

Thus, "[s]ince American Hardware is in most instances a primary

policy, its limits should be exhausted before Allstate is required

to contribute." Id. at 595.

    In seeking to apply the "Allstate Rule" here, General Star

argues that, like the insurers who had issued "umbrella" policies

in the Allstate cases, its umbrella policy only provides coverage

for the Board of Education and its employees for the ultimate net

loss in excess of the coverage provided by the underlying

insurance; thus, it could never provide primary liability coverage.

By contrast, the policy Horace Mann issued to Bell through the

West Virginia Education Association provides primary liability

coverage that converts to excess coverage only through the

operation of its other insurance provision.  Thus, General Star

urges that this case is on all fours with the "Allstate Rule" and

**MEMORANDUM OPINION AND ORDER**

that Horace Mann, therefore, must exhaust its policy limits to cover Bell's liability before General Star's umbrella coverage can be triggered.  The Court disagrees.

First, the decisions of the Fourth and Fifth Circuits adopting the "Allstate Rule" are factually distinguishable from the case at bar.  They concerned claims filed against insureds whose policies covered vehicles involved in automobile accidents.[7]  This is a sexual assault case involving school employees in their official capacity. Further, the policies in those cases were all rendered excess through the operation of "non-owned" vehicle clauses; otherwise, they were intended to provide primary coverage.  In contrast, Horace Mann's policy was always intended to provide excess coverage to the umbrella insurance provided by General Star – coverage that is part of a statutorily guaranteed package of insurance for education units and their employees in West Virginia.

Thus, both the facts and the "total policy insuring intent" of the polices involved in this case differ from those in the "Allstate" cases.  Although both the Horace Mann and General Star policies cover educators, only one, the General Star policy, is

_____

[7] The same holds true for the Fourth Circuit's recent unpublished decision in <u>Continental Casualty Co. v. Penn National Insurance Co.</u>, 128 Fed.Appx.957, (4th Cir. 2005), which General Star cites as an example of the continuing validity of the "Allstate Rule".  Like both the Fourth and Fifth Circuits' decisions, <u>Continental</u> applied the "Allstate Rule" to a policy containing a "non-owned" vehicle provision.

part of a mandated package of insurance provided by law to West Virginia public schools and their employees. Moreover, unlike the policies containing "non-owned" vehicle clauses in the <u>Allstate</u> cases, Horace Mann's policy is not intended to be a primary policy. Indeed, its policy language unambiguously makes its coverage excess whenever any other insurance covers the liability, no matter what the circumstances. It cannot be overemphasized that, here, those circumstances include General Star's obligation under West Virginia law to cover the Board of Education of Lincoln County and its employees for liability arising from the sexual assault that occurred at DuVall High School during the 2002-2003 school year.

In that year, W. Va. Code § 29-12-5a required the Lincoln County Board of Education, through the Board of Risk and Insurance Management, to carry a package of insurance with minimal limits of one million dollars of primary coverage and five million dollars of excess coverage.  The interplay and effect of that insurance package was to cover "any claim, demand, action, suit or judgment by reason of alleged negligence or other acts resulting in bodily injury or property damage to any person within or without any school building . . . if, at the time of the alleged injury, the teacher, supervisor, [or] administrator, . . . was acting in the discharge of his duties, within the scope of his office, position

or employment." <u>Id</u>.  Thus, it was pursuant to a clear statutory mandate defining its responsibilities and the scope of its coverage that General Star provided umbrella coverage to the Lincoln County Board of Education and its employees.

West Virginia law, moreover, required the Board not only to purchase that insurance, but also to indemnify its employees for damages arising out of their employment.[8]  As a school principal in the Lincoln County public school system, David Bell, therefore, was protected under this comprehensive, two-tiered scheme.  By contrast,  Horace  Mann  insured  Bell  through  his  voluntary membership in the WVEA with an additional layer of coverage that was  intended  to  be  "excess  of  any  and  all  other  insurance policies."  That  policy  was  never  designed  to  provide  primary coverage "in most instances," but, under the facts here, to cover a judgment beyond the limits of the Board's primary and umbrella coverage.  Thus, when viewed "in the light of total policy insuring intent," <u>Allstate v. Employers</u>, 445 F.2d at 1284, the Court holds that West Virginia law does not support the application of the "<u>Allstate</u> Rule" in this case, and concludes that General Star's

---

[8] Pursuant to West Virginia Code Section § 29-12A-3, the Lincoln County Board of Education is a political subdivision, which, under West Virginia Code Section § 29-12A-11(a)(2), must "indemnify and hold harmless an employee in the amount of any judgment . . . that is for damages for injury, death, or loss to persons or property caused by an act or omission of such employee."

policy limits must be exhausted before Horace Mann has any obligation to contribute its coverage.

### iii. Arguments Based on West Virginia Code

Because the Court's holding rests on other grounds, it need not address further Horace Mann's alternative argument based on a political subdivision's statutory duty to indemnify its employees for damages arising from their employment under West Virginia law.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Horace Mann's motion for summary judgment, (Doc. No. 22), **DENIES** General Star's motion for summary judgment, (Doc. No. 23), and **DECLARES** that the coverage provided by the Horace Mann policy is unambiguously excess to the coverage provided by the General Star policy.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 29, 2006.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE